# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MELVIN G. OTTE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:08-CV-2078-P (BF)** |
| | § | **ECF** |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U. S. C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Melvin G. Otte ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income disability benefits ("SSI") under Title XVI of the Act. The Court has considered Plaintiff's Brief (Doc. 19), filed May 29, 2009 ("Pl.'s Br."), Defendant's Brief (Doc. 22), filed July 29, 2009 ("Def.'s Br."), and Plaintiff's Reply Brief (Doc. 26), filed September 17, 2009. The Court has reviewed the parties' evidence in connection with the pleadings, and hereby recommends that the District Court reverse the Commissioner's decision and remand the case for further proceedings.

## **Background**

Plaintiff protectively filed concurrent applications for a period of DIB and SSI on December 5, 2005. (Tr. 58.) The Commissioner denied his claims initially on February 10, 2006, and again upon reconsideration on June 12, 2006. (Tr. 15.) Plaintiff timely requested a hearing. (Tr. 40.)

Administrative Law Judge ("ALJ") Walter Orr conducted the *de novo* administrative hearing in Dallas, Texas, on April 30, 2007. (Tr. 36; 277-303.) Plaintiff appeared at the hearing with his attorney, William F. Krause, III, and testified. (Tr. 281-303.) Suzette Skinner appeared as a vocational expert ("VE") but did not testify. (Tr. 38; 277; 279.)

After additional medical development which included a consultative psychological evaluation, the ALJ convened a supplemental hearing in Dallas on November 5, 2007. (Tr. 32; 302; 304-19.) Plaintiff appeared again with Attorney Krause but did not testify. The ALJ called Antoinette McGarrahan, Ph.D., to testify as a medical expert ("ME") and Russell Bowden to testify as a VE. (Tr. 34; 304; 306-14; 314-18.)

On November 27, 2007, the ALJ issued his Notice of Decision finding Plaintiff "not disabled." (Tr. 12-26.) Plaintiff, by Attorney Krause, requested Appeals Council review of the ALJ's decision and later submitted a supporting letter memorandum on August 21, 2008. (Tr. 11.) Nevertheless, the Appeals Council ultimately denied the Plaintiff's request for review by its Notice dated September 16, 2008. (Tr. 4-7.)

Plaintiff filed this case on November 20, 2008, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. §405(g). (Doc. 1.) This matter now is ripe for consideration on the merits.

## Age, Education, and Past Work Experience

Plaintiff was born on January 10, 1959. (Tr. 281.) He was 46 years old on July 15, 2005, his alleged onset date of disability, and was considered a "younger individual" throughout the period under consideration in his disability claims, i.e., through November 27, 2007, the date of the ALJ's decision now standing as the final decision of the Commissioner. *(Id.*; Tr. 58, 12; 20 C.F.R. §404.1563(c).)

Plaintiff quit school during his ninth grade year but earned a General Educational Development (GED) certificate in 1980 while serving in the United States Army. (Tr. 78; 288.) Plaintiff served in the Army National Guard for three years and then six additional months in the regular Army before being medically discharged due to seizure episodes. (Tr. 288; 242.)

Plaintiff last worked for Toyota of Plano for approximately two years as a warehouse manager, a skilled occupation demanding medium physical exertion. (Tr. 61; 282; 314.) He had previously worked for the same dealership as a contract delivery driver, a semi-skilled position also demanding medium exertion. (Tr. 282; 315.)

During the pertinent 15 years preceding the ALJ's decision, Plaintiff also worked for two security companies as a supervisor/trainer and for a computer store as a retail sales manager, both skilled occupations with light exertion levels. (Tr. 282-83; 315.)

## Medical History

MRI scans performed in October 2005 and February 2007, respectively, document that Plaintiff suffers from a herniated lumbar disc at L4-5 with impingement on the left nerve root and a congenitally narrow spinal canal. (Tr. 105-06; 155-56.) Plaintiff has been treated conservatively with the muscle relaxant Flexeril, the anti-inflammatory Voltaren, the anti-depressant Elavil for

nerve pain, a caudal injection, and a selective nerve root block. (Tr. 93; 174; 285.) Back surgery was recommended, but postponed indefinitely. (Tr. 285.)

Plaintiff was contemplating suicide in September 2006 when his primary care physician referred him for specialized mental health treatment at MetroCare Services. (Tr. 145; 191.) He initiated treatment in late December 2006. (Tr. 184-92.)

MetroCare psychiatrist Kristen Grable, M.D., noted on her initial evaluation on December 29, 2006, that Plaintiff had a history of previous episodes of depression and childhood physical and sexual abuse at the hands of his father. (Tr. 191.) Plaintiff's depressive symptoms at that time included middle insomnia, fatigue, decreased appetite, and anhedonia. *(Id.)*

Dr. Grable observed Plaintiff walking with a cane and exhibiting a depressed mood with concurrent dysphoric affect. (*Id.*) Since treatment by his primary care doctor with the anti-depressant bupropion had been ineffective, the psychiatrist started Plaintiff on two new anti-depressants: Celexa, 20 mg., four times daily; and Trazodone, 100 mg., at night as a sleep aid. (Tr. 180-81.)

Plaintiff continued treatment at MetroCare Services continuously through the time of his administrative hearing in November 2007. (Tr. 176-94; 250-75.) His treatment plan included individualized and group medication training, case management of community resources, individual skills training, and group therapy. (Tr. 254.) By early 2007, his mood had lifted somewhat but he was still having difficulty sleeping. (Tr. 197.) In June 2007, he was struggling with feeling overwhelmed and accompanying anxiety. (Tr. 268.)

The ALJ ordered a full psychological consultative examination, which was performed by psychologist, Dr. Gerald Stephenson, on July 17, 2007. (Tr. 239-48.) Dr. Stephenson commented

that Plaintiff's gait appeared unsteady and he used a cane when he walked. (Tr. 239.) Dr. Stephenson recorded Plaintiff's depressive symptoms as including poor sleep, low energy, poor appetite, and anhedonia. (Tr. 240-41.) Dr. Stephenson concluded that Plaintiff was "feeling overloaded," and suffering anxiety, anger, and suicidal thoughts. (*Id*.) On mental status exam, Dr. Stephenson found Plaintiff somewhat distractible with a dysphoric mood and mood-consistent affect. (Tr. 241; 243.) Plaintiff's immediate recall, short-term memory, and sequential memory were all mildly impaired. (Tr. 241-42.) Based on his clinical evaluation and Plaintiff's performance on Wechsler Memory Scale testing, Dr. Stephenson concluded that Plaintiff "will have difficulty in situations in which he has a number of distractions." (Tr. 245.)

Dr. Stephenson also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) assessment form in which he opined that Plaintiff had "no useful ability" to "respond appropriately to work pressures" or to "respond appropriately to changes in a routine work setting." (Tr. 248.) The consultative psychologist explained that Plaintiff had "very poor" stress tolerance due to evidence of chronic pain. (*Id*.)

The ME, Dr. McGarrahan, concurred with Dr. Stephenson's diagnosis of a "depressive disorder, most likely long-term dysthymia with more recent major depression." (Tr. 245; 310.) However, the ME insisted that Plaintiff's depressive disorder did not preclude him from responding appropriately to work pressures or responding appropriately to changes in a routine work setting. (Tr. 307-08.) Ultimately, Dr. McGarrahan noted that Dr. Stephenson attributed Plaintiff's poor stress tolerance and inability to adapt to change to chronic pain rather than to depression. (Tr. 311.)

## Issues

Plaintiff does not contest the ALJ's determination of his physical residual functional capacity ("RFC"). Rather, Plaintiff contends that the ALJ's decision that mentally, Plaintiff can perform all unskilled work within his physical RFC, is prejudicial legal error. Further, Plaintiff argues that the ALJ's mental RFC determination is unsupported by substantial evidence because it conflicts with SSR 85-15's directive that an ALJ must not assume that a claimant's failure to meet or equal a listed mental impairment equates with the capacity to do at least unskilled work. Plaintiff also contends that the ALJ's decision conflicts with his step 4 finding that Plaintiff is unable to perform his past relevant work as a delivery driver and the ME psychologist's testimony that Plaintiff cannot carry out detailed work tasks. Finally, Plaintiff contests the ALJ's other-work decision that is based upon the VE's testimony that given Plaintiff's age, education, work experience, and RFC, there would be no impact on the sedentary occupational base (of which there are 120,000 such jobs in Texas and 1.2 million in the United States). (Pl.'s Br. at 21, Reply at 10, citing Tr. 25.)

The Commissioner responds that the ALJ properly assessed Plaintiff's RFC and properly relied on the VE's testimony. (Def.'s Br. at 7-11, 11-16.) Additionally, the Commissioner argues that Plaintiff has not shown prejudice from the deficiencies he alleges, contending that the jobs that the VE identified constitute light work with an SVP Level of 2 and Level 2 Reasoning. (*Id*. at 11-12.)

## Standard of Review

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security

Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational

testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

The ALJ found at Step 1 of the sequential evaluation of disability that Plaintiff has not engaged in substantial gainful work activity since his alleged onset date in July 2005. (Tr. 18.) At Steps 2 and 3, the ALJ ruled that Plaintiff suffers from "severe" impairments of degenerative disc disease of the lumbar spine and a depressive disorder, but concluded that Plaintiff's physical and/or mental impairments do not meet or equal the criteria of one of the Listings of Impairments in Appendix 1. (Tr. 20-21.) The ALJ next assessed Plaintiff's physical RFC, crediting the state agency medical consultants' opinions that Plaintiff was capable of performing a full range of light work activity. (*Id*.) The ALJ assessed Plaintiff's physical and mental RFC as follows:

> The claimant has the residual functional capacity to occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and push and/or pull (including operation of hand and foot controls) consistent with his strength limitations. Dr. McGarrahan testified that the claimant has moderate restriction in activities of daily living, mild deficits in social functioning, and moderate deficiencies in concentration, persistence and

pace. These functional limitations are of a degree which formally establishes the claimant's depressive disorder as "severe" but not at listing level . . . . While these mental limitations are significant, they fail to establish that the claimant cannot understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. As these are the basic mental demands of competitive, remunerative, unskilled work, and he can meet them, I conclude that the claimant has a mental residual functional capacity to perform unskilled work.

(Tr. 22.) Then, the ALJ decided that Plaintiff could not meet the demands of his past relevant work but concluded that Plaintiff could do other work in spite of the limiting effects of his impairments. (Tr. 24-25.)

## Whether the ALJ's Mental RFC Finding
## Was the Result of Prejudicial Legal Error

Plaintiff argues that the ALJ committed legal error by finding that Plaintiff retains the mental RFC to perform unskilled sedentary work. (Pl.'s Br. at 12-13.) The Commissioner asserts that in determining Plaintiff's RFC, the ALJ did not find that Plaintiff could perform *all* unskilled work, but concluded that Plaintiff could "understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (Def.'s Br. at 8, 15.) Nevertheless, the ALJ decision plainly states: "the claimant has a mental residual functional capacity to perform unskilled work." (Tr. 22.)

When the Commissioner evaluates the severity of mental impairments for adults, the regulations require a special technique at each level in the administrative review process. 20 C.F.R. § 404.1520a(a). The ALJ must rate the degree of functional limitation that results from the mental impairment in four broad areas known as the "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2) & (c)(3). *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00. The first three

functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The fourth functional area, episodes of decompensation, is rated on a four-point scale ranging from "none" to "four or more episodes." *Id.*

Plaintiff does not contest that the ALJ properly rated the Paragraph B criteria at Step 2 to find that Plaintiff has a severe mental impairment. (Tr. 18.) Neither does Plaintiff contest the ALJ's Step 3 finding that Plaintiff's depressive disorder does not meet a listing and thus is not presumptively disabling. (Tr. 20.) At the next step, a crucial one in the evaluation of a claimant's capacity to engage in substantial gainful work activity when the criteria of the mental disorder Listings are not met or equaled but the impairment nevertheless is severe, the ALJ was required to assess Plaintiff's RFC. 20 C.F.R. Pt. 404, Supt. P. App. 1, 21 12.00A; *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). Plaintiff contends that the ALJ committed reversible legal error in assessing his mental RFC.

The ALJ acknowledged that the same Paragraph B functional assessment is not an RFC assessment. (Tr. 21.) SSR 96-8p explains:

> [T]he limitations identified in the "paragraph B" and "paragraph C" criteria . . . are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.
>
> The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders . . . .

At Steps 4 and 5, the RFC assessment is a function-by-function assessment of an individual's ability to do work-related activities. SSR 96-8p, 1996 WL 374184, *3 (1996). The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting and describe the maximum amount of each work-related activity the individual can perform. *Id.* at *2. The

categories of work-related mental activities the ALJ must consider in determining a claimant's mental RFC include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. *Id*. at *6.

An ALJ must not assume that a claimant's failure to meet or equal a listed mental impairment equates with the capacity to do at least unskilled work. SSR 85-15, 1985 WL 56857, at *4 (1985). The Commissioner's Program Operations Manual Systems ("POMS") names 14 individual mental activities that the Commissioner deems critical to performing unskilled work. *See* POMS D1 25020.10. The "basic mental demands" of unskilled work named in SSRs 85-15 and 96-9p are not individual mental demands of work as the ALJ found; rather, they are categories of mental demands of work that encompass many individual activities, as shown by POMS D1 25020.10.

The ALJ's mental RFC finding for "unskilled work" is the result of legal error that resulted from the ALJ's substitution of the "basic mental demands" of unskilled work for a full and fair "function-by-function" mental RFC analysis. Additionally, the ALJ's finding that Plaintiff had the mental RFC for unskilled work is a vocational determination of the type of work the claimant can perform despite his limitations. In making this determination, the ALJ assumed the role of a vocational expert. The ALJ claimed to have "translated the 'B' and 'C' criteria into work related functions." (Tr. 21.) The ALJ's "translation" amounted to legal error which prejudiced Plaintiff because Plaintiff was entitled to a full and fair function-by-function determination of his mental RFC.

## Whether the ALJ's Mental RFC Finding is Supported by Substantial Evidence

Following is the pertinent part of the interchange between the ALJ and the ME regarding Plaintiff's ability to perform work-related activities such as following "detailed instructions" and performing "routine, repetitive tasks:"

> ALJ: So you agree there's a moderate limitation on "remembering detailed instructions" and carry out detailed instructions?"
>
> ME: Yes. Your Honor, . . .
>
> ALJ: Could [he] perform a routine task on a repetitive basis?
>
> ME: Yes, Your Honor.
>
> ALJ: Would such a claimant be able to perform a detailed work?
>
> ME: I don't believe so. No, Your Honor.
>
> ALJ: Okay. So you might put "carry out detailed instructions" and "understand, remember detailed instructions" out at marked rather than moderate?
>
> ME: Moderate to marked.

(Tr. 309-10.) The ALJ found the testimony of Dr. McGarrahan, the ME, credible. (Tr. 23.) Then, without questioning the VE, the ALJ found that Plaintiff's limitation on his mental ability to "understand, remember, and carry out detailed instructions" impacts the skill level of occupations he can perform, rather than the complexity of the tasks he can perform–deciding that despite his mental impairments, Plaintiff can still perform unskilled work. (Tr. 22.) The Dictionary of Occupational Titles ("DOT") identifies the skill level of jobs according to the "specific vocational preparation" ("SVP") the job requires. SSR 00-45p correlates SVP levels from the DOT to the regulatory definitions of skill levels: SVP 1-2 is unskilled work; SVP 3-4 is semi-skilled work; and SVP 5-9 is skilled work. *Id*. The SVP level in a DOT listing indicating unskilled work does not address whether a job entails only simple repetitive tasks. *Lucy v. Chater*, 113 F.3d 905, 909 (8th

Cir. 1997). The Social Security's list of unskilled sedentary jobs shows that many jobs within this range require more than the mental capacity to follow simple instructions. *Id*. The GED Scale describes the aspects of education which are required of the worker for satisfactory job performance, including Reasoning Development, Mathematical Development, and Language Development. DOT, App. C. The first of six Reasoning Development Levels, Level 1, provides:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id*. Reasoning Development Level 2 provides:

> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id*. Reasoning Development Level 3 requires:

> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id*. The DOT specifies the type of reasoning capabilities each of the described jobs requires. *Lucy*, 113 F.3d at 909. Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work. *Id*.; *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). *See Davis v. Astrue*, No. 3:06-CV-883-B, 2008 WL 517238 (N.D. Tex. Feb. 27, 2008) (claimant limited to following simple or occasionally detailed instructions is incapable of performing a job with a GED reasoning level of 3). Accordingly, the ALJ's decision that Plaintiff has the mental RFC to perform all unskilled sedentary work is not supported by substantial evidence.

### Whether the VE Erred by Testifying that All Unskilled Occupations Require Only the Ability to Follow Simple, One- or Two-Step Repetitive Tasks

The ALJ concluded at Step 4 that Plaintiff is unable to perform any of his past relevant work. (Tr. 24.) Once a claimant establishes that he cannot perform his past relevant work, the burden of proof shifts to the Commissioner at Step 5 to show that other work exists that he can perform. *(Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).)

The Commissioner is required to produce expert vocational testimony or other similar evidence to meet his burden to establish that a significant number of jobs exist that the claimant can still perform when the claimant suffers from a severe mental impairment that prevents him from performing his past work. *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000); *Hearne v. Barnhart*, 111 Fed. App'x 256 (5th Cir. 2004). In this case, VE Bowden testified at Plaintiff's supplemental hearing in November 2007. (Tr. 42; 371-372; 374-380.)

The ALJ questioned the VE as follows:

ALJ: Since our psychologist has limited [Plaintiff] to no more than unskilled work, I think we're going to have to look at the occupational base. And let's look at the occupational base at the light level as our starting point. Considering the Claimant's age and educational, he's --

ALJ to Plaintiff: You have a GED. Is that right, sir?

Plaintiff: Yes, sir.

ALJ to VE: Okay. We'll take a look at light work that has the following – light, unskilled work that has the following limitations. A moderate limitation on the understanding, remembering detailed instructions, carrying out detailed instructions, moderate limitation on responding appropriately to work in – pressure in a usual work setting with the other categories rating on that document being all at slight. What would exist with the light unskilled occupational base with these mental limitations?

VE: Well, basically, Your Honor, the moderate limitations on detailed would not impact the 1,400 unskilled light occupations in that unskilled only requires the ability to follow simple (Doc. 22) repetitive tasks. And so any limitations on detailed which

14

would certainly have a greater impact on semiskilled work wouldn't really limit the unskilled occupational base at the light level. The moderate on work pressure by definition would not necessarily preclude any of the unskilled work either. So without any other limitations basically we're looking at about 1,400 unskilled light occupations represented by 1,053,000 jobs in Texas and a little over 11,000,000 in the national economy. And some examples would be a small products assembler, electronics assembler, a belt inspector as three examples.

(Tr. 315-16.)

The Commissioner makes the post-hoc rationalization that the jobs the VE identified constitute light work with an SVP Level of 2 and Level 2 Reasoning. (Tr. 316.) However, a Court may only affirm the Commissioner's decision on the grounds stated by the ALJ. *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002). First, the VE did not limit his answer to light work with an SVP Level of 2 and Level 2 Reasoning. He identified all 1,400 unskilled light occupations which would include occupations such as Cashier II, Shipping-and-Receiving Weigher, Surveillance System Monitor, and Call-Out Operator, all of which are unskilled jobs with an SVP of 2 and Reasoning Level 3. (Pl.'s Br. at 17.) Moreover, the VE did not quantify the examples that the Commissioner claims are limited to SVP of 2 and Level 2 Reasoning. Therefore, the Court cannot determine if the specific examples exist in significant numbers in the local and national economies. The VE committed legal error and the ALJ's reliance on the VE's erroneous testimony requires reversal and remand for further proceedings. The record contains no vocational testimony that quantitatively identifies a significant number of jobs in the local and national economies that a person with the mental RFC and the non-exertional limitations identified by the ALJ in his decision can perform.

Additionally, the ALJ's decision describes a colloquy with the VE about Plaintiff's non-exertional limitations that is not reflected in the record. After the ALJ concluded that Plaintiff could

perform the basic mental demands of unskilled work, the decision states that he recognized additional non-exertional limitations:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional non-exertional limitations. Specifically, the claimant has moderate restriction in activities of daily living, mild deficits in social functioning, and *moderate deficiencies in concentration, persistence, and pace*, but remains capable of performing unskilled work activity.

(Tr. 25 [emphasis supplied].)

> The ALJ's decision erroneously recalls his questions to the VE and the VE's answers:

> To determine the extent to which these non-exertional limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

Here, the ALJ appears to be questioning the VE about the unskilled light occupational base to which the VE's record answer was:

> VE: Well, basically, Your Honor, the moderate limitations on detailed would not impact the 1,400 unskilled light occupations in that unskilled only requires the ability to follow simple one- or two-step repetitive tasks. And so any limitations on detailed which would certainly have a greater impact on semiskilled work wouldn't really limit the unskilled occupational base at the light level. The moderate on work pressure by definition would not necessarily preclude any of the unskilled work either. So without any other limitations basically we're looking at about 1,400 unskilled light occupations represented by 1,053,000 jobs in Texas and a little over 11,000,000 in the national economy. And some examples would be a small products assembler, electronics assembler, a belt inspector as three examples.

(Tr. 315-16.)

> However, the ALJ's decision states that the VE's answer was as follows:

> The vocational expert testified that given all of these factors there would be no impact on the sedentary occupational basis, of which, there are 120,000 such jobs in

Texas and 1,200,000 in the United States and include representative occupations such as lamp shade assembler, eyeglass frame packager, lens inspector and order clerk.

(Tr. 25).

Because the ALJ asked the VE the same question with respect to the light unskilled occupational base as he asked with respect to the sedentary occupational base, this mixing up of the VE's answers is harmless error. However, what is not harmless error is the ALJ's failure to include in his questions to the VE all of the non-exertional limitations that the ALJ recognized: specifically he left "moderate deficiencies in concentration, persistence, and pace" out of his questions to the VE about both the light unskilled occupational base and the sedentary occupational base. (Tr. 316-17.) The category of concentration, persistence, or pace refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00C(3). The ALJ's finding that Plaintiff retained the mental residual functional capacity to perform all unskilled sedentary work is error as a matter of law. See *Chapa v. Astrue*, No. 2:05-CV-0253-J, 2008 WL 952947, at *2, *5 & *6 (N.D. Tex. Apr. 8, 2008) (finding reversible error where the ALJ rendered an expert vocational opinion by translating the claimant's moderate limitations in concentration, persistence, or pace to the capability to perform all unskilled work).

The Tenth Circuit Court of Appeals has expressly held that when an ALJ rules a claimant has "moderate" limitations in concentration, persistence, or pace, an RFC finding that a claimant retains the ability to perform "unskilled" work is insufficient. In *Wiederholt v. Barnhart*, 121 Fed. App'x 833, 839 (10th Cir. 2005), the ALJ held at Steps 2 and 3 of the sequential evaluation that the claimant had "moderate" difficulties in maintaining concentration, persistence, or pace. The ALJ

then held at Step 4 that the claimant could still perform unskilled tasks. *Id*. The Tenth Circuit has ruled that, given the ALJ's finding at Steps 2 and 3: "The relatively broad, unspecified nature of the description…'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding Ms. Wiederholt's mental impairments." *Id*.

Other courts have concluded that an RFC finding that the claimant can perform "unskilled" work is fatally flawed where the ALJ has found that the claimant has "moderate" limitations in concentration, persistence, or pace. *See Millhouse v. Astrue*, No. 8:08-CV-378-T-TGW, 2009 WL 763740 (M.D. Fla. Mar. 23, 2009) (claimant with "moderate" limitations in concentration, persistence, or pace at Steps 2 and 3 of the sequential evaluation "could not reasonably yield a mental RFC of only a restriction to unskilled work"); *see also Rasnake v. Astrue*, No. 1:08-CV-134-PRC, 2009 WL 1085969 (N.D. Ind. Apr. 22, 2009) (ALJ's mental RFC finding did not incorporate a "moderate" limitation in concentration, persistence, or pace by a simple limitation to unskilled work).

The Court finds instructive the case of *Field v. Astrue*, No. 08-4079-JAR, 2009 WL 1212044 *8 (D. Kan. May 5, 2009). First, that Court concluded the ALJ's assessment that Field was limited mentally to unskilled work "is not function-by-function in any sense of the term," as contemplated by SSR 96-8p. *Id*. at *6. Secondly, the Court read SSR 96-8p as including specific narrative discussion requirements for a mental RFC assessment and ruled that the ALJ erred in failing to explain the Plaintiff's capabilities for work-related mental activities. *Id*. at *7. The *Field* Court examined the special worksheet form used by the Commissioner's state agencies to address 20 different mental activities of work, i.e. Form SSA-4734-F4-SUP, Mental Residual Functional Capacity Assessment. *Id*.

In this case, the Commissioner argues that an ALJ is not required to complete a Mental RFC Assessment form and this Court agrees. The *Field* Court did not find any requirement for an ALJ to complete a Form SSA-4734-F4-SUP, Mental RFC Assessment. Rather, it noted that the ALJ is required to make a mental RFC assessment only after itemizing a claimant's remaining abilities in the named work-related mental functions. *Id.* Consequently, the *Field* Court concluded: … "(T)he Court finds that the ALJ erred in failing to express or explain a narrative function-by-function assessment of Plaintiff's capabilities for work-related mental activities – such as the 20 work-related mental functions expressed in the Social Security Administration's Form SSA-4734-F4-SUP." *Id.* The *Field* Court summarized: "A restriction to 'unskilled work' without additional explanation regarding specific work-related mental activities (such as those suggested in the Commissioner's Form SSA-4734-F4-SUP) is too broad and unspecified a term to convey meaning with regard to mental limitations in Plaintiff's RFC." *Id.* at *8 (parenthetical in text).

The ALJ in this case committed the same errors that the ALJ made in *Field*: he made no narrative function-by-function assessment of Plaintiff's capabilities for work-related mental activities; and he made the same overly broad and unspecified mental RFC assessment for "unskilled" light and sedentary work without including in his question to the VE the non-exertional limitation for "moderate limitation in concentration, persistence, or pace." Plaintiff was prejudiced by these legal errors.

**Whether the ALJ's Step 4 Finding that Plaintiff is Mentally Unable to Perform his Past Relevant Work as a Delivery Driver Conflicts with His Finding That Plaintiff Retains the Mental**

## Residual Functional Capacity to Perform All Unskilled Sedentary Work

The Commissioner does not dispute that the ALJ found Plaintiff "would not be capable of understanding, remembering, and carrying out the detailed or complex instructions required" in his past relevant work as delivery driver. (Pl.'s Br. at 18, citing Tr. 24.) Nor does the Commissioner dispute that Plaintiff's past work as a delivery driver is described in the DOT as demanding Reasoning Development Level 3. *Id.*, citing Exhibit C. The Court can infer that Plaintiff cannot perform tasks at the degree of complexity demanded by an occupation rated at Reasoning Development Level 3. *Id.* Yet, the ALJ concurrently ruled that Plaintiff can perform *all* unskilled occupations which would necessarily include occupations that demand Reasoning Development Level 3.

The ALJ's finding that Plaintiff retains the mental residual functional capacity to perform all unskilled sedentary work is unsupported by the ME psychologist's testimony that Plaintiff cannot perform "detailed work."

The ME assessed Plaintiff's remaining abilities to perform the individual work-related mental activities of "detailed instructions" and "routine, repetitive tasks" as follows:

ALJ: Would such a claimant be able to perform a detailed work?

ME: I don't believe so. No, Your Honor.

ALJ: Okay. So you might put "carry out detailed instructions" and "understand, remember detailed instructions" out at marked rather than moderate?

ME: Moderate to marked.

(Tr. 309-10)

The ALJ found the ME's testimony credible. (Tr. 23.) The Commissioner concedes that the medical evidence supports the ME's opinion. (Def.'s Br. at 10.) The remaining issue is whether an individual whom it is agreed cannot perform detailed work retains the mental RFC to perform *all* unskilled work otherwise within his physical capabilities. Plaintiff shows that some unskilled occupations demand Reasoning Development Level 3. (Pl.'s Br. at 17.) This Court, as well as the Southern, Western, and Eastern Districts of Texas, all have held that an individual who is unable to perform detailed or complex instructions cannot be expected to perform an occupation demanding Reasoning Development Level 3. *Davis v. Astrue*, No. 3-06-CV-883-B, 2008 WL 517238 (N.D. Tex. Feb. 27, 2008); *Woods v. Barnhart*, 458 F. Supp. 2d 336 (S.D. Tex. 2006); *Baty v. Barnhart*, 512 F. Supp. 2d 881, 893-894 (W.D. Tex. 2007); *Augustine v. Barnhart*, No. 1:00-CV-749, 2002 WL 31098512, at *6 (E.D. Tex. Aug. 27, 2002). The ALJ's finding that Plaintiff retains the mental RFC to perform *all* unskilled sedentary occupations is wholly unsupported by the ME's testimony that Plaintiff cannot perform detailed work tasks.

## Prejudicial Errors

Plaintiff was prejudiced by the ALJ's unsupported finding that he retains the mental RFC to perform all unskilled sedentary work. The Commissioner assesses Plaintiff's claim as one that "the VE's testimony is not consistent with the exertional and skill levels described in the DOT." (Def.'s Br. at 11.) However, Plaintiff contends that the error is not one of VE-DOT conflict. Rather, Plaintiff claims that had the ALJ found that Plaintiff could perform only routine, repetitive job tasks, as the ME attested, the ALJ would not have found that he could perform all unskilled sedentary occupations, including those with a Reasoning Development Level 3, such as Order Clerk, Food and Beverage. Plaintiff contends that because no vocational evidence exists to establish the number of

occupations demanding only the routine, repetitive job tasks that Plaintiff can still perform, and no evidence exists to show if the number of jobs in such occupations is significant, the case must be remanded for new VE testimony.

The Commissioner contends that Plaintiff was not prejudiced because jobs exist at the light level of exertion that do not demand Reasoning Development Level 3. (Def.'s Br. at 14.) This Court cannot weigh the evidence or supplant its own judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Disability decisions "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery*, 332 U.S. 194, 196 (1947) (calling this a "simple but fundamental rule of administrative law"). District courts "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257 (10th Cir. 2005); *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) (reversing a disability decision on the basis that the ALJ failed to explain the basis for his finding that the claimant did not meet a "listing" at step three in sufficient detail to permit "meaningful appellate review"). Administrative action cannot be affirmed on grounds different from those stated by the agency. *Hackett v. Barnhart*, 475 F.3d 1166, 1174-75 (10th Cir. 2007). The ALJ did not rule that Plaintiff is not disabled because he can perform light exertional level jobs demanding less than Reasoning Development Level 3. Therefore, this Court cannot recommend that the District Court sustain the Commissioner's final decision on those grounds. The Commissioner's argument that Plaintiff could still perform light occupations demanding Reasoning Development Level 2 also fails. (Def.'s Br.

at 14.)  The VE did not quantify how many light, unskilled occupations demand only Reasoning

Development Level 2.  (Tr. 316.)  Although he gave two examples of such jobs, without knowing

how many of these jobs exist, the Court is unable to determine whether they exist in significant

numbers in the local and national economies.  Plaintiff was prejudiced by the ALJ's legal error that

Plaintiff can perform all unskilled jobs within his physical RFC.  The District Court should remand

the case for a full and fair assessment of Plaintiff's mental RFC and new VE testimony addressing

whether a significant number of jobs exist within Plaintiff's physical and mental RFC.

## **RECOMMENDATION**

The Court recommends that the District Court reverse and remand this case for further

proceedings.

Signed, October 18, 2010.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).